**DELDAR LEGAL**
P. David Cienfuegos (CA SBN 225394)
*dcienfuegos@deldarlegal.com*
10866 Wilshire Blvd., Suite 740
Los Angeles, California 90024
Telephone: (844) 335-3271

Attorneys for Plaintiff BARBARA MARK

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA MARK, an individual; | Case No.: 23-968 |
| Plaintiffs, | |
| vs. | **COMPLAINT FOR:** |
| | 1. **VIOLATION OF RULE 10(B) OF THE EXCHANGE ACT OF 1934 AND RULE 10b-5 [15 U.S.C SECTION 78J(b) AND 17 C.F.R. SECTION 240.10B-5]** |
| BRUCE MAJESKI, an individual; BRUCE KING EQUITES, INC., a Wyoming Corporation; B&B ECONOMIC DEVELOPMENT, INC., a California limited liability company; CFO ADVISOR, a California Corporation; EZ QUAL LENDING, a California Corporation; FEARLESS INDUSTRIES, a Wyoming corporation; FISK CHARITIES, a California Public Benefits Corporation; ISABELLA INDUSTRIES, INC., a Wyoming Corporation; KAB HOLDINGS, a California corporation; PEL FINANCIAL SERVICES, a California corporation; PHIL ANTHROPY HOUSE, a California Public Benefits Corporation; SOVEREIGN WEALTH PRESERVATION INC., a Wyoming | 2. **RESCISSION UNDER SECTION 215 OF INVESTMENT ADVISERS ACT OF 1940 [15 U.S.C. SECTION 80B-1 ET SEQ.]** |
| | 3. **FRAUDULENT CONCEALMENT** |
| | 4. **CONSTRUCTIVE FRAUD** |
| | 5. **VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTIONS 25401 AND 25501** |
| | 6. **DECEIT – INTENTIONAL MISREPRESENTATION** |
| | 7. **BREACH OF FIDUCIARY DUTY** |
| | 8. **UNFAIR BUSINESS PRACTICES IN VIOLATION** |

Corporation; THE KRISTINE TAYLOR PHILANTHROPIES, a California Public Benefit Corporation; TLC ESCROW SERVICES, INC., a California corporation; MY PHILANTHROPIES, a California Public Benefits Corporation; KRISTINE TAYLOR APPEL, an individual; and DOES 1 through 200

Defendants

OF SECTION 17200 OF CALIFORNIA BUSINESS AND PROFESSIONS CODE
9.  **DECEIT – NEGLIGENT MISREPRESENTATION**
10. **BREACH OF CONTRACT**
11. **BREACH OF GOOD FAITH AND FAIR DEALING**
12. **DECLARATORY RELIEF**
13. **CONVERSION**
14. **CONSTRUCTIVE TRUST**
15. **FRAUDULENT TRANSFERS**
16. **FINANCIAL ELDER ABUSE**
17. **ACCOUNTING**

**DEMAND FOR JURY TRIAL**

**ORIGINAL COMPLAINT FOR DAMAGES**

The plaintiff, BARBARA MARK ("MARK"), by and through her attorneys, DELDAR LEGAL, brings this action against defendants as follows:

## SUMMARY OF THE CASE

1.     BRUCE MAJESKI ("MAJESKI") masterminded a fraudulent, unregistered securities offering that sold plaintiff no less than $1,753,400 worth of trust deeds[1]. MAJESKI lured plaintiff by offering her guaranteed monthly interest payments on purportedly safe deals: her funds would be used to finance trust deeds secured by real property. Defendants led plaintiff to believe that if her trust deeds were not repaid, she would have the ability to foreclose to recover her investment.

2.     In reality, monthly interest payments were a return of principal and not always made. The same underlying property was often pledged as purported collateral on numerous investors' trust deeds.

3.     In addition to misrepresenting how plaintiff's funds would be used and secured, MAJESKI misappropriated MARK's funds for his own benefit and use.

4.     MAJESKI misrepresented that as of 12/1/2019, all trust deeds held by ISABELLA INDUSTRIES, and BRUCE KING EQUITIES, were transferred to plaintiff's company JOSEPH ADAY PROPERTIES.

5.     MAJESKI misrepresented that as of 6/1/2020, notes in the amount of $1,590,400.00 and secured by trust deeds, were transferred to plaintiff's company, JOSEPH ADAY PROPERTIES.

6.     MAJESKI misrepresented that as of 11/01/2021, notes in the amount of $1,753,400 and secured by trust deeds had been transferred to plaintiff's company JOSEPH ADAY PROPERTIES.

7.     MAJESKI misrepresented that effective 3/11/2022, regardless of

---

[1]  The term Trust Deeds is used herein but in reality includes a promissory note which is secured by a trust deed.

**3**
**ORIGINAL COMPLAINT FOR DAMAGES**

the beneficiary, all note disbursements were to be paid to plaintiff's company, JOSEPH ADAY PROPERTIES, and that said notes total $1,753,400 as of 03/11/22 and yield $16,272.50 per month. MAJESKI further attested that the beneficiary of all notes had been transferred to plaintiff's company, JOSEPH ADAY PROPERTIES, effective March 11, 2022.

8.    MAJESKI violated the anti-fraud provisions of the federal securities laws by his actions. MAJESKI also offered and sold securities in violation of the registration provisions of the federal securities laws. MAJESKI acted as an unregistered securities broker-dealer when he actively solicited potential investors, including plaintiff.

## THE PARTIES

9.    Plaintiff BARBARA MARK is, at all times, mentioned herein, an individual over the age of 65, residing in Orange County, California, and is the President of JOSEPH ADAY PROPERTIES.

10.    Defendant BRUCE MAJESKI is an individual residing and having his principal place of business in Orange County, California. On information and belief, MAJESKI is an investment adviser representative as defined under the provisions of the Investment Adviser Acts of 1940. [15 U.S.C. Section 80b-1 et seq.]

11.    Defendant BRUCE KING EQUITES, INC., is a Wyoming Corporation formed by MAJESKI that does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste 430, Irvine, CA 92612. MAJESKI was president until he replaced himself with Barbara Mark on April 1, 2021.

12.    Defendant B&B ECONOMIC DEVELOPMENT, INC., is a California limited liability company formed by MAJESKI that does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste. 430, Irvine, CA 92612. MAJESKI is the sole shareholder

of this entity.

13.     Defendant CFO ADVISOR is a California Corporation formed by MAJESKI that does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste. 430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

14.     Defendant EZ QUAL LENDING is a California Corporation formed by MAJESKI that does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste. 430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

15.     Defendant FEARLESS INDUSTRIES is a Wyoming corporation formed by MAJESKI that does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste. 430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

16.     Defendant FISK CHARITIES is a California Public Benefits Corporation, formed by MAJESKI, that does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste 430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

17.     Defendant ISABELLA INDUSTRIES, INC., is a Wyoming Corporation formed by MAJESKI that does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste 430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

18.     Defendant KAB HOLDINGS is a California corporation formed by MAJESKI that does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste. 430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

19.     Defendant PEL FINANCIAL SERVICES is a California corporation formed by MAJESKI that does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste.

**ORIGINAL COMPLAINT FOR DAMAGES**

430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

20. Defendant PHIL ANTHROPY HOUSE is a California Public Benefits Corporation formed by MAJESKI. It does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste. 430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

21. Defendant SOVEREIGN WEALTH PRESERVATION INC. is a Wyoming Corporation formed by MAJESKI that does business in Orange County, California. Its principal place of business is 18301 Von Karman Avenue, Ste. 430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

22. Defendant THE KRISTINE TAYLOR PHILANTHROPIES, is a California Public Benefit Corporation, formed by MAJESKI, that does business in Orange County, California. Its principal place of business is 2522 Chambers Rd., Tustin, CA 92780. MAJESKI is the sole shareholder of this entity.

23. Defendant TLC ESCROW SERVICES, INC. is a California corporation formed by MAJESKI that does business in Orange County, California. Its principal place of business is 18301 Von Karman Ave., Suite 430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

24. Defendant MY PHILANTHROPIES, a California Public Benefits Corporation formed by MAJESKI, does business in Orange County, California. Its principal place of business is 18301 Von Karman Ave., Suite 430, Irvine, CA 92612. MAJESKI is the sole shareholder of this entity.

25. Defendant KRISTINE TAYLOR APPEL is an individual residing and having her principal place of business in Orange County, California. MAJESKI is the sole shareholder of this entity.

26. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants, DOES 1 through 200, being any

unknown business entity; all persons unknown, claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to plaintiff's title or any cloud on plaintiff's title thereto, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a fictitiously named defendant is in some manner responsible for the events and happenings herein referred to, either contractually or tortuously, and caused the damage to plaintiff as herein alleged. When plaintiff ascertains the true names and capacities of DOES 1 through 200, inclusive, she will ask leave of this Court to amend her complaint by setting forth the same.

27.   At all times herein mentioned, each of the defendants, which is incorporated herein by this reference, was and is the agent, servant, and employee of each of the other defendants, and all of the things alleged to have been done by said defendants were done in the capacity of and as agent of the other defendants.

## CO-CONSPIRATORS, AIDERS, AND ABETTORS

28.   Defendants, along with other persons, individuals, partnerships, corporations, and associations not named in this complaint, have participated as co-conspirators and have aided and abetted in the unlawful acts alleged in this complaint and have performed acts and made statements in furtherance thereof.

## AGENCY, JOINT VENTURE, ALTER EGO

29.   Plaintiff is informed and believes and, based thereon, alleges that at all times mentioned herein, all of the defendants were the officers, directors, brokers, agents, contractors, advisors, servants, partners, joint venturers, managers, owners, parents, subsidiaries, and employees of their Co-defendants, and were acting within the scope of their authority as such agents,

contractors, advisors, servants, partners, joint venturers, managers, owners, parents, subsidiaries, and employees with the permission and consent of their Co-defendants. Each defendant acted as a principal and was involved in the relevant trust deed ponzi scheme.

30.    Plaintiff is informed, believes, and based thereon alleges that there existed and exists such a unity of interest and ownership between defendants that the separate personalities of the corporation and the shareholder do not in reality exist. Accordingly, plaintiff is informed, believes, and based thereon alleges that defendants are the "alter-egos" of each other.

31.    At all times relevant, each defendant served as the agent for each other, and all of these defendants pursued a common course of conduct, acted in concert, conspired with one another, and aided and abetted one another to accomplish the wrongful conduct herein alleged, which wrongful conduct has caused plaintiff damage and loss in excess of the jurisdictional limit of this Court.

## JURISDICTION AND VENUE

32.    This Court has subject matter jurisdiction over plaintiff's claims pursuant to Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C Section 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. Section 240.10b-5], the Investment Advisers Act of 1940 [15 U.S.C. Section 80b-1] and also pursuant to 28 U.S.C. Section 1331. This court also has jurisdiction over plaintiff's supplemental state claims pursuant to 28 U.S.C. Section 1337.

33.    Venue is proper in this district pursuant to 28 U.S.C. 1391(a)(2) and (b) (2); defendants conduct business in Orange County, and most of the acts alleged herein occurred in this district.

## FACTS

34.    Plaintiff MARK invested no less than $1,753,400 in a series of fraudulent real estate trust deed investments initiated and solicited by

MAJESKI and several of his controlled corporate entities. MARK was over the age of sixty-five when the acts alleged herein occurred.

35.     At all relevant times, the MAJESKI represented to plaintiff that the was a knowledgeable and experienced trust deed investment professional specializing in the origination and servicing of trust deed investments and that plaintiff's funds would be invested in trust deeds.

36.     In reliance on these representations, plaintiff invested no less than $1,753,400 with MAJESKI. Plaintiff transferred these funds to MAJESKI through a series of transactions between 2013 and March 2022.

37.     MAJESKI promised to provide MARK with trust deeds and assignments of the corresponding trust deeds in exchange for her investments. MAJESKI represented that these documents would evidence MARK's ownership of the loans and secure the plaintiff's investment while giving the plaintiff the right to foreclose in the event of default.

38.     In reality, MAJESKI failed to provide MARK trust deeds and assignments, despite repeated requests by plaintiff and the passage of a reasonable time for MAJESKI to fulfill these obligations.

39.     MAJESKI's failure to provide the trust deeds and assignments constitutes a breach of the parties' agreement and a violation of California and Federal securities laws, which require the issuance of such documents in connection with trust deed investments.

40.     As a direct and proximate result of the MAJESKI's wrongful conduct, the plaintiff has suffered damages in an amount to be proven at trial but believed to be in excess of the jurisdictional minimum for this Court.

41.     MAJESKI's fraudulent conduct has further damaged MARK, as plaintiff invested her funds in reliance on MAJESKI's false representations and material omissions, which MAJESKI knew or should have known was false or misleading.

**ORIGINAL COMPLAINT FOR DAMAGES**

**Majeski's Offer and Sale of Trust Deeds**

42.    Starting around 2013, MAJESKI and several entities he formed began to solicit investors for trust deed investments.

43.    MAJESKI established a scheme to sell trust deeds purportedly secured by first and second trust deeds on real properties. MAJESKI solicited MARK to invest money and promised, in return, to give her monthly interest payments plus security in the form of a trust deed on the individual real property in which her money was invested. In connection with this trust deed ponzi scheme, between 2013 and 2022, MAJESKI offered and sold trust deeds, which were securities, to MARK and other investors in California and Nevada.

44.    MAJESKI used numerous legal entities to aid in the trust deed ponzi scheme. MAJESKI was the incorporator and owner of BRUCE KING EQUITIES, INC.; CFO ADVISOR, INC.; EZ QUAL LENDING, INC.; FEARLESS INDUSTRIES, INC; FISK CHARITIES, INC.; ISABELLA INDUSTRIES, INC.; JOSEPH ADAY PROPERTIES, INC.; KAB HOLDINGS, INC.; MY PHILANTHROPIES; PEL FINANCIAL SERVICES, INC.; PHIL ANTHROPY HOUSE; SOVEREIGN WEALTH PRESERVATION INC.; THE KRISTINE TAYLOR PHILANTHROPIES; TLC ESCROW SERVICES, INC., and; TSUNAMI PRODUCTS.

45.    These entities operated as extensions of MAJESKI's trust deed ponzi scheme and held title to real property. MAJESKI is connected to over 150 other companies to facilitate his activities.

46.    MAJESKI directed his entities to record trust deeds, assignments of trust deeds, reconveyances, and hold title to real property. MAJESKI had formal titles with most of these entities but operated and controlled them all.

47.    MAJESKI marketed and solicited investors personally through face-to-face meetings, e-mails, and telephone conversations.

48.    As part of soliciting investors for the trust deed ponzi scheme,

MAJESKI falsely represented to MARK that her funds would be segregated and also claimed that the investments were safe, and carried little risk, because she would receive a promissory note secured by a trust deed to the underlying real property. MAJESKI further represented that MARK would receive guaranteed monthly interest payments of at least ten percent per year and a return of her principal at the end of the investment term. MAJESKI explained that the investments were a type of short-term financing. Few, if any, trust deeds in favor of MARK were offered in writing at the time of monetary exchange. MAJESKI represented that his escrow company would handle everything in good faith and order. In reality, MAJESKI's escrow company is unlicensed.

49.    Once MARK invested in the trust deed ponzi scheme, MAJESKI never sent any documents evidencing the trust deed investments.

50.    As an investor, MARK had no duties or management roles in the scheme's operation. Instead, she was a passive investor, expecting to earn profits through MAJESKI's efforts, and only verbal reassurances by MAJESKI were offered. MARK was not an 'accredited' investor. MAJESKI failed to provide MARK with any (1) Investor Questionnaire, (2) Lender/Purchaser Disclosure Statement; (3) Investor Suitability Statement; (4) Business & Professions Code 10236.7 Disclosure; (5) W-9 IRS Form; (6) Appraisal Waiver Form; (7) Loan Servicing Agreement; (8) Title Report and Policy; (9) Loan Summary; (10) Loan Documents; (11) Promissory Notes; (12) Trust Deeds.

**Majeski's Misrepresentations, Fraud, and Deceit**

51.    The statements MAJESKI made to MARK, both orally and through the written offering documents, were materially false and misleading. Contrary to the representations made by MAJESKI the trust deeds were not secured by any underlying real properties. Any assignments of beneficial interest were

made to MAJESKI's entities and thus was a personal interest; it did not give MARK any interest in any real properties. MARK could not foreclose on the underlying properties if her trust deeds were unpaid, and the terms and conditions were breached.

52.    For example, MAJESKI would take ownership of a property in the name of one of his entities; MAJESKI would then record a loan against that property with his other entity being the lender, then sell fractional ownership interest in that deed of trust to unsuspecting investors which were held in the names of those "investor's entities" owned and controlled by MAJESKI.

53.    MAJESKI's statements that MARK held  trust deeds were also false. MAJESKI often used one property to "secure" multiple trust deeds, meaning that numerous investors were falsely told that they had a priority claim to the same piece of real property.

54.    Similarly, because the same property was often attached to multiple deeds of trust, MARK was not guaranteed a reasonable loan-to-value ratio. For example, MAJESKI assigned 119% interest from one $500,000 promissory note.

55.    MAJESKI falsely claimed that MARK's funds would be segregated and used only for specific trust deed investments. On information and belief, MARK's funds were pooled and deposited into the general operating accounts of MAJESKI's entity issuing the trust deeds and co-mingled with other investor funds. These funds were routinely transferred between the entities' bank accounts. They were essentially treated as undocumented (and undisclosed) interest-free loans between the entities. MAJESKI routinely misappropriated these funds to operate his other businesses and to pay himself.

56.    These false and misleading statements were made to MARK between 2013 and 2022. MAJESKI made the misrepresentations or omissions

to MARK in meetings and conversations.

57.   On information and belief, MAJESKI made similar misrepresentations to other investors between 2013 and 2022.

58.   These misrepresentations and omissions were material, and MARK would have considered them essential to her investment decisions.

59.   MAJESKI knew or was reckless in not knowing that he made numerous material misstatements and omissions and committed many deceptive acts to further the fraudulent trust deed ponzi scheme.

**Majeski's Misappropriation of Mark's Funds**

60.   Not only did MAJESKI solicit MARK's investments through fraud and deceit, but he also misappropriated those funds for his benefit.

61.   For example, between approximately 2013 and 2022, MARK invested no less than $1,753,400 in trust deed investment with MAJESKI, yet, she has never been given trust deeds are any other written documents evidencing her investments.

62.   During the scheme, MAJESKI did return to MARK some funds misrepresented as interest payments but were a partial return of principal to entice other investments.

**Majeski's Offer and Sale of Unregistered Securities**

63.   Securities may not be offered or sold unless a registration statement for that security has been filed with the SEC. Each sale of a security must be made pursuant to a registration statement or fall under a registration exemption.

64.   The trust deeds offered and sold to MARK as part of the trust deed ponzi scheme were securities under federal law. MARK purchased the trust deeds to earn profits through monthly interest payments. As a passive investor, MARK expected to profit through MAJESKI's efforts. As part of the trust deed ponzi scheme, the trust deeds were offered to MARK and the public through MAJESKI's companies and personal solicitations by MAJESKI. Any

purported risk-reducing features of the trust deeds, such as being secured by real properties, were illusory, as detailed herein. Finally, MARK's funds were pooled, and the success of the investments depended on the success of MAJESKI's efforts.

65.   MAJESKI offered and sold these securities to MARK using the means or instruments of interstate commerce, including but not limited to telephones, e-mail, and mail. MAJESKI marketed the trust deed ponzi scheme through his numerous entities and solicited investors personally through, among other things, e-mails and telephone conversations. MAJESKI also drafted, signed, and sent offering documents to MARK.

66.   No registration statements were filed or in effect at the time of the offers and sales of those trust deed investments.

67.   The separate issuances of the trust deeds by MAJESKI's numerous entities are subject to integration. MAJESKI controlled these entities, which were used interchangeably to perpetuate the scheme. MAJESKI disregarded corporate formalities, including operating and controlling each entity regardless of whether he had a formal title or role and continuously shuffling funds among the numerous entities. The entities were all engaged in identical operations in the same type of business. MARK funds were commingled and routinely transferred between MAJESKI's entities' bank accounts.

68.   Further, the trust deeds investment offerings constituted one continuous offering. The offerings were all part of a single plan and were made for the same purpose, to raise funds for the fraudulent trust deed ponzi scheme. The offerings all involved the sale of trust deeds for cash and were continuous between 2013 and March 2022.

69.   No registration exemption applied to the integrated offering of the trust deeds investments. MAJESKI offered and sold MARK these trust deed investments totaling at least $1,753,400 in California and Nevada. MAJESKI

**ORIGINAL COMPLAINT FOR DAMAGES**

engaged in general solicitations through his entities to the public, including MARK. MARK was not provided (1) Investor Questionnaire, (2) Lender/Purchaser Disclosure Statement; (3) Investor Suitability Statement; (4) Business & Professions Code 10236.7 Disclosure; (5) W-9 IRS Form; (6) Appraisal Waiver Form; (7) Loan Servicing Agreement; (8) Title Report and Policy; (9) Loan Summary; (10) Loan Documents; (11) Promissory Notes; (12) Trust Deeds. Moreover, MARK was not a sophisticated or accredited investor pursuant to SEC rules and regulations.

### Majeski's Actions as an Unregistered Broker-Dealer

70.    A broker or dealer may not use certain means, such as the mail or telephone, to effect transactions in securities unless that broker or dealer is registered with the SEC, associated with a registered broker-dealer, or subject to an exemption or safe harbor.

71.    MAJESKI acted as a broker by using interstate commerce to market and sell the trust deeds issued in the ponzi scheme. MAJESKI marketed the trust deed ponzi scheme through, among other things, e-mails and telephone conversations, and solicited investors personally through, among other things, e-mails and telephone conversations. He obtained funds from MARK through the mail or by check or wire transfer. He also advised MARK about the purported merits of the trust deed investments. He negotiated with MARK on his behalf and the entities which issued the trust deeds.

72.    Despite acting as a broker, MAJESKI was not registered with the SEC, associated with a registered broker-dealer, nor was he subject to any exemption or safe harbor. Neither does MAJESKI possess any license from the California Department of Real Estate.

///

///

///

### FIRST CAUSE OF ACTION

### VIOLATION OF RULE 10(B) OF THE EXCHANGE ACT OF 1934 AND RULE 10B-5 [15 U.S.C Section 78j(b) and 17 C.F.R. Section 240.10b-5]

### AGAINST ALL DEFENDANTS

73.   Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

74.   Defendants engaged in the conduct described herein, directly or indirectly, in the offer or sale of securities by use of means or instruments of transportation or communication in interstate commerce or by use of the mails: (1) with scienter, employed devices, schemes, or artifices to defraud; (2) obtained money or property by means of untrue statements of a material fact or by omitting or state a material fact necessary to make the statement made, in light of the circumstances under which they were made, not misleading; or (3) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit on the purchaser. Specifically, MAJESKI and the other defendants failed to notify plaintiff and recklessly disregarded the facts that any underlying real property did not secure MARK's investments in trust deeds. The "collateral assignment of beneficial interest" was made to MAJESKI's entities and thus was a personal interest; it did not give MARK any interest in the actual trust deeds. Accordingly, MARK could not foreclose on the underlying properties if the trust deeds were unpaid and the terms and conditions of the trust deeds were breached.

75.   MAJESKI's statements that MARK held  trust deeds were also false. MAJESKI often used one property to "secure" multiple trust deeds, meaning that numerous investors were falsely told that they had a priority claim to the same piece of real property.

76.   Finally, MAJESKI falsely claimed that MARK's funds would be

**ORIGINAL COMPLAINT FOR DAMAGES**

segregated and used only for specific trust deed investments. On information and belief, MARK funds were pooled and deposited into the general operating accounts of each entity issuing the trust deeds and co-mingled with other investor funds. These funds were routinely transferred between the entities' bank accounts. They were essentially treated as undocumented (and undisclosed) interest-free loans between the entities. As described below, MAJESKI routinely misappropriated these funds to operate his other businesses and to pay himself.

77.   By engaging in the conduct described herein, defendant violated, and unless restrained and enjoined, will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. Section 78j(b), and Rule 10b-5 thereunder, 17 C.R.F. Section 240.10b-5.

78.   As a proximate result of the fraudulent conduct of MAJESKI as herein alleged, plaintiff has incurred damages in that plaintiff was induced to invest in fractionalized trust deeds with MAJESKI, all by reason of which plaintiff has been damaged in the sum of no less than $1,753,400, plus attorney's fees and costs, according to proof at trial.

## SECOND CAUSE OF ACTION
## RESCISSION UNDER SECTION 215 OF INVESTMENT ADVISERS ACT OF 1940 [15 U.S.C. Section 80b-1 et seq.]
## AGAINST ALL DEFENDANTS

79.   Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

80.   MAJESKI is an investment adviser under the Investment Advisers Act, 15 U.S.C. Section 80b-1 et seq., and acted as plaintiff's investment adviser at all relevant times.

81.   MAJESKI engaged in the business of advising plaintiff directly as to the value of securities and as to the advisability of investing in, purchasing,

or selling securities as defined at 15 U.S.C. Section 80b-2(11).

82.    MAJESKI received compensation for his services related to the investments sold to plaintiff as described in this Complaint.

83.    Under the Investment Advisers Act, MAJESKI, as an investment adviser, owed plaintiff a fiduciary duty to fully and fairly disclose all material facts and an affirmative obligation to follow plaintiff's investment goals and objectives in making all investments.

84.    MAJESKI breached his fiduciary duty to plaintiff by making misrepresentations regarding the suitability of investments in the trust deed investments for plaintiff. MAJESKI concealed and omitted material facts concerning MAJESKI's actions as financial advisor to plaintiff, thereby deceiving plaintiff with full knowledge that such representations or omissions resulted in false and misleading information. Such false and misleading information led plaintiff to believe that her investments were made according to her investment goals and objectives and that actual trust deeds secured her investments.

85.    As a result of MAJESKI's breach of his fiduciary duty, plaintiff's purchase, investment, and acquisition of the fractionalized trust deed investments are void under the Investment Advisers Act, 15 U.S.C. Section 80b-15(b).

86.    Plaintiff seeks a declaratory judgment that her investments with respect to the trust deeds and MAJESKI are void. Plaintiff also seeks an accounting and restitution, as well as disgorgement of all profits made by MAJESKI due to his conduct in violation of the Investment Advisers Act.

### THIRD CAUSE OF ACTION
### FRAUDULENT CONCEALMENT
### AGAINST ALL DEFENDANTS

87.    Plaintiff repeats the allegations set forth above and incorporates

**18**
**ORIGINAL COMPLAINT FOR DAMAGES**

them by reference as though the same were more fully set forth herein.

88.   Defendants intentionally failed to disclose certain relevant and important facts that would be material to any investor in deciding whether to purchase a trust deed investment secured by the property, including, but not limited to, (1) Investor Questionnaire, (2) Lender/Purchaser Disclosure Statement; (3) Investor Suitability Statement; (4) Business & Professions Code 10236.7 Disclosure; (5) W-9 IRS Form; (6) Appraisal Waiver Form; (7) Loan Servicing Agreement; (8) Title Report and Policy; (9) Loan Summary; (10) Loan Documents; (11) Promissory Notes; (12) Trust Deeds.

89.   Defendants owed plaintiff duties of fidelity, care, and disclosure and were either in a fiduciary or confidential relationship with plaintiff as defined in California law. Because of such fiduciary duty, and because the defendant had superior knowledge of the true state of facts which were unknown and unavailable to plaintiff through the exercise of reasonable diligence, and because they were aware and intended for plaintiff to rely on their integrity and fidelity, and it was reasonable for plaintiff to repose confidence and trust in them under the circumstances, and because they used misrepresentations to mislead plaintiff, the defendant had a duty to disclose (1) Investor Questionnaire, (2) Lender/Purchaser Disclosure Statement; (3) Investor Suitability Statement; (4) Business & Professions Code 10236.7 Disclosure; (5) W-9 IRS Form; (6) Appraisal Waiver Form; (7) Loan Servicing Agreement; (8) Title Report and Policy; (9) Loan Summary; (10) Loan Documents; (11) Promissory Notes; (12) Trust Deeds. By making the affirmative misrepresentations to plaintiff, defendant were under a duty not to conceal any facts to plaintiff pursuant to California Civil Code Sections 1709 and 1710.

90.   Plaintiff did not know the material facts the defendant concealed and suppressed from her. Defendants intended to deceive plaintiff by

concealing and suppressing the true facts surrounding the trust deed investments, MAJESKI, and his numerous corporate entities.

91.   Plaintiff reasonably and justifiably relied on defendant' misrepresentations.

92.   Defendants' deception harmed plaintiff because she invested her money for the purpose of receiving monthly interest payments plus security in the form of a trust deed on individual pieces of property. MARK invested with MAJESKI, not knowing that MAJESKI, in his representations, failed to disclose that he would be investing and holding properties that exceeded the value of the investments. If defendant had told the truth to plaintiff and had not suppressed the true facts surrounding the trust deed investments, plaintiff would not have invested in the trust deeds or MAJESKI.

93.   Defendants' concealment of the material facts was a substantial factor in causing plaintiff's harm and was the direct and proximate cause of plaintiff's harm.

94.   Each defendant knowingly and willfully conspired and agreed with each other to assist in accomplishing the fraudulent scheme by undertaking the activity outlined herein. Defendants did the acts and things alleged pursuant to, and in furtherance of, said conspiracy. MARK invested in reliance on the misrepresentations of one or more members of the conspiracy and was injured in an amount to be determined according to proof. Each defendant is liable for all of the injury to plaintiff by virtue of his/her/its participation in the alleged conspiracy to defraud.

95.   Each defendant knowingly, intentionally, and materially assisted in the fraudulent scheme by the conduct described, which included agreeing to make material misrepresentations, conceal facts from plaintiff, and making statements to plaintiff that concealed said facts. Plaintiff was injured in an amount to be proved at trial by the fraudulent scheme, which each defendant

assisted. Therefore, each defendant is liable for aiding and abetting the fraud.

96.   As a direct and proximate result of defendant' misconduct, plaintiff has suffered severe financial damage in an amount according to proof believed to be no less than $1,753,400.

97.   The conduct described herein constitutes "oppression, fraud or malice" as those terms are defined in California Civil Code Section 3294. plaintiff is therefore entitled to punitive damages in an amount according to proof.

**FOURTH CAUSE OF ACTION**

**CONSTRUCTIVE FRAUD**

**AGAINST ALL DEFENDANTS**

98.   Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

99.   By virtue of their titles and positions and engaging in the conduct described herein, defendant owed a fiduciary duty to plaintiff and were in a confidential relationship with MARK. Plaintiff reposed faith, confidence, trust, and reliance on the judgment and advice of defendant. Plaintiff and defendant were in a confidential and fiduciary relationship based on the faith, confidence, trust, and reliance that plaintiff placed in what defendant represented as superior knowledge, judgment, and advice.

100.  By not discharging their duties to plaintiff to provide competent investment and real estate advice, defendant caused plaintiff to invest in trust deed investments, which plaintiff would not have done had she known the true facts regarding the investments.

101.  Plaintiff justifiably relied on the advice and counsel of defendant. Plaintiff would not have made the investments had defendant properly disclosed the true facts.

102.  Defendants' actions constituted constructive fraud under Civil

**21**

**ORIGINAL COMPLAINT FOR DAMAGES**

Code Section 1573.

103.  As a direct and proximate result of defendants' actions, plaintiff suffered substantial damages in an amount according to proof but believed to be no less than $1,753,400.

104.  Defendants' conduct as described herein constitutes "oppression, fraud or malice" as those terms are defined in Civil Code Section 3294. plaintiff is therefore entitled to punitive damages in an amount according to proof.

### FIFTH CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTIONS 25401 AND 25501
### AGAINST ALL DEFENDANTS

105.  Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

106.  Defendants, by engaging in the conduct described herein, offered and sold fractionalized trust deeds and investments, both of which constitute securities, in the State of California, utilizing both written and/or oral communications, which included untrue statements of material fact and/or omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

107.  As a proximate result of the fraudulent conduct of defendant, as alleged herein, plaintiff has incurred damages by investing in fractionalized trust deed and MAJESKI's ponzi schemes, all by reason of which plaintiff has been damaged in the amount to be no less than $1,753,400, plus attorney's fees and costs.

108. The aforementioned conduct of defendant was an intentional misrepresentation, deceit, or concealment of a material fact known to each of the defendant with the intent on the part of the defendant of depriving plaintiff of property or legal rights or otherwise causing injury and was despicable

conduct that subject plaintiff to cruel and unjust hardship in conscious disregard of plaintiff's rights, to justify an award of exemplary and punitive damages.

**SIXTH CAUSE OF ACTION**
**DECEIT – INTENTIONAL MISREPRESENTATION**
**AGAINST ALL DEFENDANTS**

109.  Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

110. Defendants made representations of fact contained herein concerning MAJESKI's promise to provide MARK with trust deeds and assignments of the corresponding trust deeds in exchange for her investments. MAJESKI represented that these trust deeds would evidence MARK's ownership of loans and secure the plaintiff's investment while giving the plaintiff the right to foreclose in the event of default. These representations were false when made, and defendant knew them to be false or were reckless in now knowing they were false.

111.  Defendants intended plaintiff to rely on their representations in considering whether to purchase trust deed investments both directly and for the economic benefit of defendant.

112.  Plaintiff did reasonably and justifiably relied on the defendant' representations concerning MAJESKI's promise to provide MARK with trust deeds and assignments of the corresponding trust deeds in exchange for her investments. MAJESKI represented that these documents would evidence MARK's ownership of loans and secure the plaintiff's investment while giving the plaintiff the right to foreclose in the event of default.

113.  Plaintiff was harmed as a direct and proximate result of her reliance on the false representations because she purchased trust deed investments without receiving trust deeds and assignments of the corresponding trust deeds

in exchange for her investments. MAJESKI never provided any documents evidencing MARK's ownership of the loans. Despite MAJESKI's representations, plaintiff's investment did not give plaintiff the right to foreclose in the event of default. If plaintiff had known the true facts, plaintiff would not have invested in the trust deed investments with MAJESI or defendant.

114.   Each Defendant knowingly and willfully conspired and/or agreed with each other to assist in the fraudulent scheme by undertaking the activities described herein, and in particular, by making the false representations that induced plaintiff to purchase the trust deed investments and invest with MAJESKI to her detriment. Defendants did the acts and things herein alleged pursuant to, and in furtherance of, said conspiracy. Each Defendant is liable for all of the injury to plaintiff by virtue of its alleged participation in the herein-alleged conspiracy to defraud.

115.  Each Defendant knowingly, intentionally, and substantially assisted each other in implementing the fraudulent scheme by the conduct described herein, which included agreeing to make material misrepresentations and/or to conceal material facts from plaintiff. By making such material misrepresentations to plaintiff to induce plaintiff to purchase trust deed investments and investments with MAJESKI, each Defendant provided substantial assistance to each other in accomplishing their fraudulent objectives. Plaintiff was injured in an amount to be proved at trial by the fraudulent scheme, which was materially assisted by each Defendant but believed to be no less than $1,753,400. Therefore, to the extent any Defendant may not be primarily responsible for the fraudulent conduct alleged herein, each such Defendant is nonetheless liable for aiding and abetting the primary fraud committed by the others.

116.  As a direct and proximate result of the defendant' misconduct,

plaintiff has suffered severe financial damage in an amount believed to be no less than $1,753,400, all of which will be established according to proof at trial.

117.  The conduct described herein constitutes "oppression, fraud, and malice," as those terms are defined in California Civil Code Section 3294. Plaintiff is therefore entitled to punitive damages in an amount according to proof.

**SEVENTH CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**AGAINST ALL DEFENDANTS**

118.  Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

119.  Plaintiff is an investment advisee of MAJESKI. Defendants owed and continue to owe a fiduciary duty to plaintiff.

120.  Defendants breached their fiduciary duty to plaintiff by failing to provide accurate disclosures, appraisals, and investment advice regarding the trust deed investments.

121.  Defendants failed to conduct themselves as would a prudent investment advisor or manager. Defendant's acts and/or omissions with regard to plaintiff fell below the standard of care. They were imprudent and recklessly disregarded the rights of plaintiff and/or plaintiff's financial circumstances.

122.  Defendants' failure to meet the standard of care in their behavior towards plaintiff and have caused plaintiff financial damages in an amount according to proof but believed to be no less than $1,753,400.

**EIGHTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES IN VIOLATION OF SECTION**
**17200 OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE**
**AGAINST ALL DEFENDANTS**

123.  Plaintiff repeats the allegations set forth above and incorporates

**ORIGINAL COMPLAINT FOR DAMAGES**

them by reference as though the same were more fully set forth herein.

124.   Since 2013, defendants have engaged in the unfair and unlawful business practice of not making material disclosures to MARK regarding trust deed investments. On information and belief, defendants are engaged in other unfair and unlawful business practices that violate laws pertaining to such disclosures, and such violations constitute unfair business practices.

125.   These acts and practices violate Business & Professions Code §17200 et seq. in that they are unlawful and unfair.

126.   Defendants are perpetrating these unlawful and unfair practices on MARK and the general public.

127.   Plaintiff was and is a victim of this unlawful and unfair practice and is representative of the members of the public so harmed. Plaintiff has suffered actual loss and injury because of these practices. Plaintiff's claims and loss and injury are typical of other members of the public on whom defendants have perpetrated the unfair practice of failing to make accurate disclosures and/or concealing facts from investors as required by law. As a direct and proximate result of the unfair business practices of defendants, plaintiff has incurred damage in that she was induced to invest in fractionalized trust deeds and MAJESKI's ponzi schemes, all by reason of which plaintiff has been damaged in the amount to be no less than $1,753,400, or according to proof, as well as interest, attorneys' fees and costs.

128.   As a further direct and proximate result of the unfair business practices of defendants, plaintiff is entitled to an order directing defendants for an order prohibiting defendants from engaging in any further investments, assignments, sales, or transfers of fractionalized trust deeds.

///

///

///

**ORIGINAL COMPLAINT FOR DAMAGES**

## NINTH CAUSE OF ACTION
## DECEIT – NEGLIGENT MISREPRESENTATION
## AGAINST ALL DEFENDANTS

129.  Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

130.  Defendants made the misrepresentations described herein to plaintiff without any reasonable grounds for believing them true.

131.  Defendants owed a duty to plaintiff to ensure that the information and/or assurances provided to her regarding trust deed investments were reasonable based on the information available to them, publicly known, and/or that they reasonably believed such information to be accurate. Defendants made factual misrepresentations and/or material omissions in the face of overwhelming facts and evidence demonstrating the falsity of their assertions and/or omissions.

132.  Defendants made their misrepresentations with the intent that plaintiff rely on them and induce her to invest in fractionalized trust deeds investments for the economic gain of the defendants.

133.  The plaintiff reasonably and justifiably relied on the defendants' misrepresentations as set forth herein.

134.  Defendant's affirmative misrepresentations were the immediate cause of plaintiff's conduct, i.e., the purchase of trust deed investments with MAJESKI. Without such misrepresentations, plaintiff would not have invested in trust deed investments with MAJESKI or defendants.

135.  The true state of facts about the trust deeds was unknown and unavailable to plaintiff through the exercise of reasonable diligence. Plaintiff, in fact, actually, reasonably, and justifiably relied on the defendants' representations as set forth herein.

136.  As a direct and proximate result of defendants' misconduct,

plaintiff has suffered severe financial damages in an amount according to proof but is believed to be no less than $1,753,400.

## TENTH CAUSE OF ACTION
## BREACH OF CONTRACT
## AGAINST ALL DEFENDANTS

137.  Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

138.  Defendants entered into agreements, either actually or impliedly, orally or in writing to be determined by further discovery, whereby plaintiff agreed to deliver funds to defendants, and defendants agreed while acting in the capacity of investment advisors to provide plaintiff with trust deed investments.

139.  Plaintiff has fulfilled all promises required on their part to be performed in accordance with the terms and conditions of the contract by delivering good funds to defendants.

140.  Defendants breached the agreements by failing on each occasion to provide plaintiff with (1) Investor Questionnaire, (2) Lender/Purchaser Disclosure Statement; (3) Investor Suitability Statement; (4) Business & Professions Code 10236.7 Disclosure; (5) W-9 IRS Form; (6) Appraisal Waiver Form; (7) Loan Servicing Agreement; (8) Title Report and Policy; (9) Loan Summary; (10) Loan Documents; (11) Promissory Notes; (12) Trust Deeds. Defendants further breached by engaging in a conspiracy to convert plaintiff's funds to their use without performing the promises made by the defendants respecting the issuance of trust deeds.

## ELEVENTH CAUSE OF ACTION
## BREACH OF GOOD FAITH AND FAIR DEALING
## AGAINST ALL DEFENDANTS

141.  Plaintiff repeats the allegations set forth above and incorporates

them by reference as though the same were more fully set forth herein.

142.   California law recognizes an implied covenant of good faith and fair dealing in every contract. The covenant is to the effect that neither party to the contract will do anything deliberately to deprive the other of the benefits of the agreement. *Pasadena Live. LLC v. City of Pasadena* (2004) 114 Cal. App. 4th 1089, 1092-1094, 8 Cal. Rptr. 3d 233.

143.   Defendants owed a duty of good faith and fair dealing to plaintiff by virtue of the oral and/or written contract between plaintiff and defendants.

144.   Defendants have a duty not to take advantage of plaintiff by failing to disclose material information to plaintiff. Furthermore, defendants must not engage in unfair dealing with plaintiff by failing to secure plaintiff's best interests in trust deeds and failing to carry out their duties in recording the assignments or trust deeds against which plaintiff has secured interests.

145.   Defendants have taken advantage of plaintiff by failing to disclose material information that plaintiff's money was not used for trust deed investments.

146.   Defendants failed to secure plaintiff's interests in trust deeds and have failed to carry out their duties to record assignments of trust deeds.

147.   In acting as described herein, defendants have not proceeded in good faith, nor in a manner that serves plaintiff's best interests as an investor in trust deeds.

148.   Furthermore, defendants, by failing to disclose material information as required by law, have breached the duty of fair dealing. As a direct and proximate result of defendants and each of their acts, plaintiff has been damaged in a sum according to proof at trial.

///

///

///

**ORIGINAL COMPLAINT FOR DAMAGES**

## TWELFTH CAUSE OF ACTION
## DECLARATORY RELIEF
## AGAINST ALL DEFENDANTS

149.   Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

150.   Plaintiff alleges that an actual controversy exists between plaintiff and defendants regarding plaintiff's trust deed investments with MAJESKI and the misappropriation of plaintiff's investment funds. Plaintiff contends that defendants breached a fiduciary duty and failed to invest plaintiff's funds in trust deed investments and/or misappropriated her funds for their gain, thereby exposing plaintiff to actual damages.

151.   Plaintiff desires a judicial determination of her rights and interests as to the purported trust deed investments. Plaintiff desires a judicial determination that defendants have breached a fiduciary duty to plaintiff and have failed to invest plaintiff's funds in trust deed investments and/or failed to provide assignments of trust deeds in favor of plaintiff, all to plaintiff's injuries.

152.   Under these circumstances, a judicial declaration is appropriate so that plaintiff may ascertain her rights regarding any damages she has suffered due to defendants' misappropriation of no less than $1,753,400 and failure to provide assignments of trust deeds. Without the requested judicial declaration, plaintiff will continue to suffer financial and other economic burdens because plaintiff will be unable to recover the money invested with MAJESKI or foreclose on her interests in real properties, collect on their past due Notes, and will incur additional legal fees, costs, penalties, and other injuries suffered by plaintiff.

///
///
///

**THIRTEENTH CAUSE OF ACTION**

**CONVERSION**

**AGAINST ALL DEFENDANTS**

153. Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

154. Defendant acting as escrows in transactions between plaintiff and MAJESKI represented to plaintiff that they were a reputable escrow company and that they would duly invest plaintiff's funds in trust deed investments to induce plaintiff to invest in trust deeds with MAJESKI.

155. These representations were, in fact, false, and defendants, and all of them, knew of their falsity. The true facts were that defendants knew that plaintiff's money was not invested in trust deeds and that defendant TLC ESCROW SERVICES, INC. is not a licensed escrow company. Defendants concealed this information from plaintiff. Furthermore, defendants did not intend to invest plaintiff's money in trust deeds or secure.

156. MARK justifiably relied on defendants' representations to induce MARK to invest with defendants.

**FOURTEENTH CAUSE OF ACTION**

**CONSTRUCTIVE TRUST**

**AGAINST ALL DEFENDANTS**

157. Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

158. At all material times herein, a confidential relationship existed between plaintiff and defendants in that Defendant, TLC ESCROW SERVICES, INC., served as escrow for investments by plaintiff with MAJESKI, and defendants were the caretakers of the funds invested by plaintiff.

159. At all material times herein, plaintiff believed implicitly in the

integrity and truthfulness of defendants and reposed absolute trust and confidence in them.

160.   Plaintiff is informed and believes and thereon alleges that by virtue of the fraudulent acts of defendants, defendants hold property of plaintiff, including unpaid Notes secured by trust deeds as a constructive trustee for plaintiff's benefit.

161.   Plaintiff is informed and believes and thereon alleges that by virtue of the fraudulent acts of defendants, defendants hold the real properties located at 445 Cartwright Ave. # 207, Los Angeles, CA 91602, and 6682 Magnolia Ave., Riverside, CA 92506, purchased with plaintiff's funds, as a constructive trustee for plaintiff's benefit.

162.   Plaintiff has therefore been damaged as a proximate result in a sum according to proof at trial and requests that a constructive trust be imposed.

## FIFTEENTH CAUSE OF ACTION
## FRAUDULENT TRANSFERS
## AGAINST ALL DEFENDANTS

163.   Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

164.   At all times mentioned herein, plaintiff has been the holder of certain claims against defendants. The claims consist of funds invested in trust deeds payable to plaintiff.

165.   Defendants are indebted to plaintiff. Plaintiff has performed all conditions, covenants, and promises under the contract, on her part to be performed, by providing good funds to defendants. Plaintiff invested in trust deed investments with MAJESKI and defendants, acting in the capacity of escrow, were to secure MARK's investment in trust deeds for plaintiff.

166. Plaintiff is informed and believes and thereon alleges that defendants purporting to act as licensed escrows and escrow officers accepted

money from plaintiff on separate occasions with a return promise that they would secure plaintiff's trust deed investments with assignments of trust deeds in a timely fashion to secure plaintiff's investment in trust deeds.

167. Although defendants took plaintiff's funds on separate occasions, no assignments of trust deeds or trust deeds were recorded with plaintiff as beneficiary. Instead, defendants and MAJESKI misappropriated plaintiff's money.

168. Although on the date of the aforementioned agreement, no part of plaintiff's claims against defendants had matured, plaintiff is further informed and believes and thereon alleges that the obligation was incurred with an actual intent to hinder, delay, or defraud plaintiff in the collection of her claims.

169. Plaintiff is informed and believes and thereon alleges that the obligations to invest plaintiff's money in trust deed investments and/or to record assignments of trust deeds to secure plaintiff's interests in real properties were received by defendants with knowledge that MAJESKI, intended to hinder, delay, or defraud the collection of plaintiff's aforementioned claims and the claims of future creditors of defendants.

170. Defendants had such knowledge by virtue of an agreement between defendants and MAJESKI to defraud plaintiff in collecting profits.

## SIXTEENTH CAUSE OF ACTION
## FINANCIAL ABUSE OF AN ELDER IN VIOLATION OF CAL. WELF. & INST. CODE & 15600 et seq.
## AGAINST ALL DEFENDANTS

171. Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

172. In 1991 the California Legislature enacted the Elder Abuse Act, codified in California Welfare & Institutions Code §15600 et seq. In enacting the Elder Abuse Act, the Legislature expressly recognized that elders (defined

as persons above the age of 65) are victims of financial fraud and abuse, among other forms of neglect and harm, and intended to provide enhanced civil remedies to redress the reckless acts and omissions within the Act's ambit that are perpetrated against our elders, stating "...It is the further intent of the Legislature in adding Article 8.5 (commencing with Section 15657) to this chapter to enable interested persons to engage attorneys to persons and dependent adults." (California Welfare & Institutions Code §15600(j)).

173.   As alleged herein, defendants committed acts or omissions of financial mismanagement and abuse of MARK as that term is used in Welfare & Institutions Code §15610.30.

174.   At the time defendants did the aforementioned fraudulent and unfair acts related to MARK's personal property, she was at least 69 years old and, therefore, an "elder" within the meaning of the California Elder Abuse Law. (California Welfare & Institutions Code §15610.27).

175.   The Law provides that "Abuse of an elder or a dependent adult" includes "financial abuse...or other treatment with resulting physical harm or pain or mental suffering." (California Welfare & Institutions Code §15610.07).

176.   Defendants took, secreted, appropriated, obtained, or retained real or personal property of MARK for wrongful use or with intent to defraud, or both, which violated California law and thereby legally the proximate cause of plaintiff's damages.

177.   Defendants assisted in taking, secreting, appropriating, obtaining, or retaining real or personal property of MARK for wrongful use or with intent to defraud, or both, which violated California law and was the proximate cause of plaintiff's damages.

178.   Defendants took, secreted, appropriated, obtained, or retained, or assisted in taking, secreting, appropriating, obtaining, or retaining real or personal property of MARK by undue influence, which violated California law

and was the proximate cause of plaintiff's damages.

179.   Defendants knew or should have known that by taking, secreting, appropriating, obtaining, or retaining real or personal property of MARK, their conduct was likely to be harmful to MARK, which violated California law and thereby legally the proximate cause of plaintiff's damages.

180.   By engaging in the acts alleged herein, defendants committed directly and/or aided and abetted elder financial abuse in violation of California Welfare & Institutions Code §5610.30(a)&(b) by taking advantage of MARK's mental and physical condition and committing the acts or omissions described herein.

181.   Defendants' conduct, hereinbefore described, was reckless, oppressive, fraudulent, and malicious within the meaning of California Welfare & Institutions Code §15657 et. seq. Under California Civil Code §3294 and California Welfare & Institutions Code §15657.5 defendants are liable for compensatory, all other remedies otherwise provided for law, attorneys fees and costs, as well as punitive damages.

**SEVENTEENTH CAUSE OF ACTION**

**ACCOUNTING**

**AGAINST ALL DEFENDANTS**

182.   Plaintiff repeats the allegations set forth above and incorporates them by reference as though the same were more fully set forth herein.

183.   Plaintiff is informed and believes, and thereon alleges, that defendants have converted to their personal use funds received from MARK that were authorized only for investing in trust deeds secured by real property on behalf of MARK. Such conversion of MARK's funds breached the agreement between defendants and MARK and was done wrongfully and fraudulently.

184.   The exact amounts of unauthorized misappropriation of trust deeds,

**35**

**ORIGINAL COMPLAINT FOR DAMAGES**

funds, interest, and money received and expended by defendants for their personal use rather than on behalf of MARK are unknown to plaintiff and can be determined only by an accounting.

185.   Plaintiff has and hereby does, demand an accounting by defendants of the amounts of unauthorized misappropriation of trust deeds, funds, interest, and money received and expended by defendants for their personal use rather than on behalf of MARK. Defendants have failed and refused, and continue to fail and refuse, to render a true and correct accounting.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment against as follows:

### FIRST CAUSE OF ACTION

1.   For general damages according to proof at trial;

2.   For exemplary and punitive damages;

3.   For attorneys; fees and costs;

### SECOND CAUSE OF ACTION

1.   Rescinding any investment agreements with defendants and requiring defendants to return all funds, no less than $1,753,400, that plaintiff entrusted to defendants;

2.   Disgorgement of all profits earned by defendants through the use of plaintiff's funds for the purchase of real properties or trust deeds;

3.   For attorneys' fees and costs;

### THIRD CAUSE OF ACTION

1.   For general damages according to proof at trial;

2.   For exemplary and punitive damages;

3.   For attorneys; fees and costs;

### FOURTH CAUSE OF ACTION

1.   For general damages according to proof at trial;

2.   For exemplary and punitive damages;

**ORIGINAL COMPLAINT FOR DAMAGES**

## FIFTH CAUSE OF ACTION

1.      For general damages according to proof at trial;

2.      For exemplary and punitive damages;

3.      For attorney's fees and costs;

## SIXTH CAUSE OF ACTION

1.      For general damages according to proof at trial;

2.      For exemplary and punitive damages;

3.      For attorney's fees and costs;

## SEVENTH CAUSE OF ACTION

1.      For general damages according to proof at trial;

2.      For exemplary and punitive damages;

3.      For attorney's fees and costs;

## EIGHTH CAUSE OF ACTION

1.      For general damages according to proof at trial;

2.      For injunctive relief prohibiting defendants from conducting appraisals, trust deed sales, or investments in trust deeds;

3.      For attorney's fees and costs;

## NINTH CAUSE OF ACTION

1.      For general damages according to proof at trial;

## TENTH CAUSE OF ACTION

1.      For general damages according to proof at trial;

2.      For exemplary and punitive damages;

3.      For attorney's fees and costs;

## ELEVENTH CAUSE OF ACTION

1.      For general damages according to proof at trial;

2.      For exemplary and punitive damages;

3.      For attorney's fees and costs;

**ORIGINAL COMPLAINT FOR DAMAGES**

**TWELFTH CAUSE OF ACTION**

1.    For declaratory relief that all proceeds and profits derived from the use of plaintiff's funds are, and should be declared by this Court to be, the property of plaintiff, and the Court should declare that they are held by defendants and any successors, assigns, or transferees, attorneys, agents, of any of those defendants in constructive trust for the benefit of plaintiff and impose such a constructive trust on all those proceeds and profits.

**THIRTEENTH CAUSE OF ACTION**

1.    For general damages according to proof at trial;

2.    For exemplary and punitive damages;

3.    For attorney's fees and costs;

**FOURTEENTH CAUSE OF ACTION**

1.    For a declaration and imposition of constructive trust that by virtue of the fraudulent acts of defendants, defendants hold certain personal and/or real property of plaintiff, including real properties and unpaid promissory notes secured by trust deeds as a constructive trustee for plaintiff's benefit.

**FIFTEENTH CAUSE OF ACTION**

1.    That any transfers from defendants of any interest in any trust deeds be set aside and declared void as to plaintiff herein to the extent necessary to satisfy plaintiff's investments in the sum of no less than $1,753,400, plus costs, plus interest thereon at the legal rate of 10% per annum from the time of plaintiff's first investment.

2.    That defendants be restrained from transferring or conveying any interest in any trust deeds or properties until the claims mentioned herein held by the plaintiff against the defendants are satisfied.

3.    That a temporary restraining order be granted enjoining and restraining defendants and their representatives, attorneys, and agents from selling, transferring, conveying, or otherwise disposing of any trust deeds or

property;

4.     That an order be made declaring that the defendants hold all the trust deeds and property described herein in trust for the plaintiff;

5.     That defendants be required to account to the plaintiff any profits and proceeds earned from or taken from the use of plaintiff's investments;

### SIXTEENTH CAUSE OF ACTION

1.     For general damages according to proof at trial;

2.     For exemplary and punitive damages;

3.     For attorney's fees and costs;

### SEVENTEENTH CAUSE OF ACTION

1.     For an accounting and an order that defendants provide access to all relevant financial information, including, without limitation, any and all bank records, escrows, savings accounts, checking accounts, money-market accounts, canceled checks, and correspondence, from which to determine the extent to which funds provided by plaintiff were wrongfully or fraudulently converted to defendants' personal use.

### ON ALL CAUSES OF ACTION

1.     For interest in an amount according to proof at trial;

2.     For costs of suit incurred herein; and

3.     For such other and further relief as this court deems just and proper.


Dated: June 1, 2023                    Respectfully Submitted,


**DELDAR LEGAL**

**ORIGINAL COMPLAINT FOR DAMAGES**

By: _____
P. David Cienfuegos (CA SBN 225394)
*dcienfuegos@deldarlegal.com*
10866 Wilshire Blvd., Suite 740
Los Angeles, California 90024
Telephone: (844) 335-3271

Attorneys for Plaintiff BARBARA
MARK

**ORIGINAL COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands, as a matter of right, trial by jury on all causes of action in this case.

Dated: June 1, 2023                    Respectfully Submitted,

**DELDAR LEGAL**

By: _____
P. David Cienfuegos (CA SBN 225394)
*dcienfuegos@deldarlegal.com*
10866 Wilshire Blvd., Suite 740
Los Angeles, California 90024
Telephone: (844) 335-3271

Attorneys for Plaintiff BARBARA MARK

**41**
**ORIGINAL COMPLAINT FOR DAMAGES**